## Pysher v. Pysher

*Thomas L. Walters*, for plaintiff.
*Gus Milides* and *Richard Shiroff*, for defendant.

WILLIAMS, *P.J.*, June 30, 1982—This matter is before the court on defendant's rule to show cause why she should not be granted post-divorce alimony in accordance with 23 P.S. §501. The record before us consists solely of the depositions of the parties taken on November 4, 1981, pursuant to the aforesaid rule. In addition, the parties have submitted briefs.

Mr. and Mrs. Pysher were married in July, 1959. They cohabited, along with Mrs. Pysher's three children from her first marriage, until February, 1970, when Mr. Pysher permanently left the marital residence. At the time of the parties' separation in 1970, Mrs. Pysher's children were ages 21, 18 and 17. Mr. and Mrs. Pysher were divorced in December, 1980. No children were born of their marriage.

The record established that Mrs. Pysher is 52 years old. She has a tenth grade education and no specialized training in any vocation. Since she left high school, she has held a variety of jobs, including work in a pretzel factory, a defense plant, a

laundry, and as a cleaning person at the Hotel Easton. During the time of her marriage to Mr. Pysher, Mrs. Pysher worked for approximately one year as a school crossing guard, one year cleaning ice cream trucks, and one year at a bedspread factory. After the parties' separation, Mrs. Pysher worked for nine years as a school crossing guard. She was forced to quit her job as a crossing guard because the inclement weather to which she was exposed was incompatible with her arthritis. Mrs. Pysher subsequently took a position as a cleaning woman in a church in Phillipsburg, New Jersey, where she remains employed today. She works five hours a day, five days a week and takes home approximately $73 a week.

The record further established that Mrs. Pysher lived by herself in an apartment in Easton. Her monthly rent is $189. Her average monthly bills, including gas, electric, water, telephone and sewer, total $69. Mrs. Pysher does not own a car; she spends approximately $16.75 a month on public transportation to her employment in New Jersey. She spends $21.50 a month on life insurance and has no medical insurance. In addition, she incurs the following monthly expenses: medication, $4.50; haircuts, $3; newspaper, $7; television cable, $6. Mrs. Pysher receives $44 per month in food stamps, which she supplements with approximately $50 per month in cash borrowed from her father or sister. Mrs. Pysher owns no real estate. Her only debt is $200 in past-due per capita taxes. Although Mrs. Pysher testified that she is included in her father's will, there is no testimony as to the amount Mrs. Pysher stands to inherit from her father.

With regard to her physical condition, Mrs. Pysher complains of arthritis for which she first

sought medical attention six years previous to the deposition. She last consulted a doctor concerning her arthritis in 1979. At the time of the deposition, she was treating this condition with aspirin. The only other recent medical difficulty she complains of is hemorrhaging during her menstrual cycle, for which she underwent a D & C procedure in December, 1980. Mrs. Pysher testified that this condition requires her to miss one day of work per month.

The record does not reveal the age of Mr. Pysher. His formal education also ceased at the tenth-grade level. He is skilled as a compositor but last worked in such capacity in 1979. After 18 months with Manpower, Mr. Pysher was employed at Bethlehem Steel as a laborer, where his base pay was approximately $9.70 an hour. His average take-home pay from Bethlehem Steel was $300 a week. Mr. Pysher worked at Bethlehem Steel for 27 months until he was laid off in September, 1981. At the time of the deposition, he was collecting $175 per week unemployment compensation and SUB pay of $105 per check. He testified that he had received one such SUB payment, and that three or four others had fallen due but had not yet been paid. Mr. Pysher owns no real estate. His only debt is an $1,800 bank loan, $400 of which was outstanding at the time of the deposition. He testified that he made his loan payments by savings bonds which he had accumulated while working at Bethlehem Steel. The $1,800 loan was used to purchase furnishings for his apartment and to pay moving expenses.

Mr. Pysher rents his living quarters, which consists of two rooms and a bath. His rent is $200 a month, heat included. His monthly bills include telephone, approximately $10; cable, approximately $6; and food, approximately $200. In addi-

tion, he pays a cleaning woman $20 a week and a laundress $10 a week. Mr. Pysher owns a 1969 Chrysler New Yorker automobile. He testified that he spends $30 a week on entertainment, which consists of patronizing a local bar in Easton.

Following the separation in 1970, a support order was entered directing the husband to pay his wife $60 per week, later amended to add $5 per week to be applied to arrearages. This order was terminated upon entry of the divorce decree in December, 1980.

The standards for passing upon a claim for post-divorce alimony are set forth in detail in Section 501 of the Divorce Code, 23 P.S. §501(a), (b) and (c). The relatively short existence of the new code leaves us with no appellate cases interpreting this section and the character of alimony under it. This court has recently addressed the issue in Casey v. Casey, no. 1980-C-3075 (May, 1982), and adopted the view of Judge Wettick in Paul W. v. Margaret W., 130 P.L.J. 6 (1981). Judge Wettick addressed the question whether the legislature, in adopting the new Divorce Code, intended to provide permanent support to equalize the income of the parties whose earning capacities substantially differ or whether the purpose of alimony, as a general rule, is only to permit the spouse with the smaller earning capacity to reach his or her earning potential and to adjust gradually to living without support from the former spouse. Relying on subsection (c) of Section 501, Judge Wettick concluded that the primary purpose was the latter. Subsection (c) provides:

"(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished

by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

 (1) obtaining appropriate employment; or

 (2) developing an appropriate employable skill."

Judge Wettick also noted the following in his opinion:

"In certain cases, however, it would be very unfair to limit support to rehabilitative alimony. Consequently, through subsection (b) the Legislature intended for the court to create exceptions to the general rule for these cases. The exceptions, however, should cover only the atypical situations because we would otherwise emasculate the concepts of rehabilitative alimony embodied in subsections (a) and (c)."

130 P.L.J. at 12. Subsection (b) of Section 501 provides:

"(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

 (1) The relative earnings and earning capacities of the parties.

 (2) The ages, and the physical, mental and emotional conditions of the parties.

 (3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

 (4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony."

Viewing the positions of the parties with these factors in mind, we find that the parties are virtually on equal footing. Both parties entered and exited the marriage with few, if any, assets. The testimony indicates that the standard of living established by the parties during the eleven-year marriage was modest and is consistent with the lifestyle they each maintain today. No children were born to Mr. and Mrs. Pysher, keeping Mrs. Pysher out of the employment market. Mrs. Pysher's apparent role as homemaker during her

marriage to Mr. Pysher was necessitated by her three minor children, now emancipated, from her former marriage. Although these children were not adopted by Mr. Pysher, Mr. Pysher contributed to their support.

Neither party is in failing health. Mrs. Pysher has some minor medical problems but they are not of the type which "substantially diminish" her ability to provide for her own needs through appropriate employment. Both parties have the same limited formal education, yet have demonstrated an ability to secure employment. While Mr. Pysher's earnings have been greater than Mrs. Pysher's, Mr. Pysher's skill as a compositor is no longer in demand and he is presently laid off from Bethlehem Steel. Mrs. Pysher is only employed part-time and last sought full-time employment in July, 1981. That unsuccessful job search, which consisted of several applications to area hospitals and convalescent homes, was not of such magnitude as to convince us that Mrs. Pysher is unable to secure appropriate gainful employment. As of this date she has been without support from Mr. Pysher for more than a year. Mr. Pysher's income is enough to meet his current needs, with some money left over for weekly entertainment.

Mrs. Pysher's monthly expenditures, all reasonable and necessary, exceed her monthly income by $74.75. At the present time she is unable to support herself by the limited employment she has selected, nor does she have sufficient property or other sources of income to provide for her reasonable needs. We therefore conclude that an award of alimony is appropriate. In so doing, we are mindful of our statement in Casey, supra, that "the primary purpose for awarding alimony is rehabilitative. It is only the unusual case which would justify alimony

designed to provide permanent support to equalize the income of the parties." Id. at 7. We do not consider this to be the unusual case in which a spouse is prevented by "compelling impediments" from acquiring employment which enable him or her to be self-supporting or one in which there are other equities that would point to a permanent award. Thus, considering all of the factors of Section 501(b) set forth above, we hold that an award of temporary alimony for a period of two years in the amount of $100 a month is appropriate in amount and duration to permit Mrs. Pysher to seek full-time employment to meet her reasonable needs.

Wherefore, we enter the following;

### ORDER

And now, June 30, 1982, defendant's petition for post-divorce alimony is granted. Plaintiff shall pay alimony to defendant in the amount of $100 per month for a period of two years from the date of this order.